UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| AGGRESSIVE MUSIC, SONY/ATV TUNES, LLC, JON BON JOVI PUBLISHING, EMI FULL KEEL MUSIC COL. and M O B MUSIC PUBLISHING<br>　　　　Plaintiffs, | ) ) ) ) ) ) | |
| v. | ) ) | No. 1:08-CV-0274 PPS |
| P. A. R. POWER WASHING, INC., and BRUCE PFEIFFER,<br>　　　　Defendants. | ) ) ) | |

## OPINION AND ORDER

Before the Court is Plaintiffs Aggressive Music, Sony/ATV Tunes, LLC, Jon Bon Jovi Publishing, EMI Full Keel Music, Co., and M O B Music Publishing's (collectively "Plaintiffs") Motion for Default Judgment against Defendants P.A.R. Power Washing, Inc. ("P.A.R.") and Bruce Pfeiffer, President and Secretary of P.A.R. For the reasons set out below, Plaintiffs' Motion for Default Judgment is **GRANTED**.

## BACKGROUND

On November 14, 2008, Plaintiffs filed their Complaint against Defendants alleging copyright infringement pursuant to 17 U.S.C. § 504 and seeking injunctive relief, statutory damages, costs and attorney's fees. (DE 1.) Plaintiffs are holders to the performance rights of certain music compositions and are members of the American Society of Composers, Authors, and Publishers ("ASCAP"), a performance rights licensing organization. (DE 1 ¶¶ 3, 12.) Defendant P.A.R. is a corporation that owns and operates 469 Sports & Spirits, which is a sports bar. (DE 1 ¶ 4.) On December 22, 2007, Plaintiffs witnessed the unlicensed public performance

1

of four copyrighted songs at 469 Sports & Spirits. (DE 1, Schedule "A".) Prior to December 22, 2007, ASCAP made numerous attempts by letter and phone to contact P.A.R. about licensing music for the regular performances held at 469 Sports & Spirits, but to no avail. (*Id.* ¶ 12.) ASCAP estimates that P.A.R., by dodging its license obligations, has avoided paying as much as $2,816.33 in music licensing fees. (DE 11 ¶ 14.) Consequently, Plaintiffs initiated this action on November 14, 2008. (DE 1.)

Answers to the Complaint for both defendants were due December 11, 2008. (DE 5; DE 6.) On January 27, 2009, the due date for those Answers being past due, Plaintiffs filed an Application for Clerk's Entry of Default (DE 7), which the Clerk subsequently entered (DE 8) the following day. A full eight months later, on September 2, 2009, Plaintiffs filed a Motion for Default Judgment. (DE 9.) Prior to this Court's ruling on the Motion for Default Judgment, Defendants filed its Motion to Set Aside Entry of Default, which was denied. (DE 17; DE 23.)

As a consequence of the additional attorney fees and costs incurred by Plaintiffs' opposition to Defendants' Motion to Set Aside Entry of Default, Plaintiffs filed their Supplemental Motion for Default Judgment, which requests an upward adjustment for the additional attorney fees and costs. (DE 26.)

**DISCUSSION**

Federal Rule of Civil Procedure 55 governs the entry of default and default judgment. Prior to obtaining a default judgment under Rule 55(b)(2), there must be an entry of default as provided by Rule 55(a). *Cameron v. Myers*, 569 F. Supp. 2d 762, 764 (N.D. Ind. 2008). Under Rule 55(a), the clerk is to enter the default of a party against whom a judgment is sought when that party has failed to plead or otherwise defend. Fed. R. Civ. Pro. 55(a). "This entry is

recognition of the fact that a party is in default for a failure to comply with the rules." *Cameron*, 569 F. Supp. 2d at 764. Because the Clerk has already entered default against Defendants in this case, I may now enter default judgment under Rule 55(b)(2), if appropriate.

Courts may consider a number of factors when deciding a motion for default judgment. Those factors include the amount of money potentially involved, whether material issues of fact or issues of substantial public importance are present, whether the default is largely technical, whether plaintiff has been substantially prejudiced by the delay involved, and whether the grounds for default are clearly established or are in doubt. 10A Wright *et al.*, Fed. Prac. & Proc. Civ. 3d § 2685 (3d ed. 2007); *see Cameron*, 569 F. Supp. 2d at 764.

As the matter here is controlled largely by statute, there are few material issues of fact. The issues of public importance that are implicated weigh in favor of Plaintiffs, as the public has an interest in ensuring that intellectual property such as Plaintiffs' music here is protected and properly licensed. Moreover, the default here cannot be said to be a mere technicality, as the defendant failed to respond to the complaint or enter any appearance in this matter for more than eight months after the clerk's entry of default. Thus, although the amount of money involved here is not insignificant, the factors weigh in favor of a default judgment.

When a court determines that the defendant is in default, all well-pleaded allegations of the complaint are taken as true. *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 602 (7th Cir. 2007); *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994). So I take as true Plaintiffs' assertion that P.A.R. is liable to Plaintiffs for the four counts of infringing use of copyrighted music at 469 Sports & Spirits on December 22, 2007.

"Although upon default the factual allegations of a complaint relating to liability are

taken as true, those allegations relating to the amount of damages suffered are ordinarily not." *Dundee Cement Co. v. Howard Pipe & Concrete Prods. Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983) (citations omitted). Federal Rule of Civil Procedure 55(b)(2) provides that a court may hold a hearing or conduct an investigation if necessary to determine the amount of damages, but no such inquiry is necessary if "the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." *Dundee*, 722 F.2d at 1323. Plaintiffs' requested relief includes statutory damages, injunctive relief, and attorney's fees. As discussed below, the relief requested here falls within the court's discretion and may be determined without resort to a hearing on the damages.

**1. PLAINTIFFS' STATUTORY DAMAGES**

Under the Copyright Act of 1976, plaintiffs may elect to recover either the actual damages and any profits made by the infringing party, or statutory damages. *See* 17 U.S.C. § 504(a). Moreover, 17 U.S.C. § 504(c) provides parameters for the amount of statutory damages to be awarded, and reads in relevant part:

> [T]he copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just.

17 U.S.C. § 504(c)(1).

Awarding statutory damages "between the minimum and maximum statutory limits for copyright infringement damages is wholly within the trial court's discretion and sense of justice." *Illinois Bell Telephone Co. v. Haines & Co.*, 905 F.2d 1081, 1089 (7th Cir. 1990). In determining statutory damages, the court should consider "the expenses saved and profits reaped

4

by the defendants in connection with the infringements, the revenues lost by the plaintiffs as a result of the defendant's conduct, and the infringers' state of mind whether willful, knowing, or merely innocent." *Divine Mill Music v. Blackmon's Inc.*, No. 08-cv-501, 2008 WL 4853575 (S.D. Ill. Nov. 5, 2008).

Plaintiffs have elected to recover statutory damages and seek the total amount of $8,000 for the four counts of infringement – $2,000 per act of infringement. (DE 9, at 2.) Plaintiffs estimate that Defendants have avoided paying $2,816.33 in license fees. (DE 10, at 5.) As to whether P.A.R.'s actions were willful, Plaintiffs provide evidence of numerous letters and phone calls, made during a period of more than two years, directed to P.A.R. in attempts to compel compliance with the licensing requirements. (DE 11-2.) Those letters and phone calls establish that P.A.R. was on notice of its obligation to obtain a license for the music and chose instead to operate unlicensed. To prevent P.A.R. from continuing to profit from the knowing use of unlicensed music, as well as to protect Plaintiffs' intellectual property interests, I will set the statutory damages at $2,000 per infringed work, for a total amount of $8,000 in statutory damages.

## 2. INJUNCTIVE RELIEF

In addition to statutory damages, Plaintiffs seek an injunction against P.A.R. "Any court . . . may . . . grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). Although "the issuance of an injunction is in the discretion of the court, courts have traditionally granted permanent injunctions if liability is established and a continuing threat to a copyright exists." *Divine Mill*, 2008 WL 4853575, at *3 (quoting *Jobete Music Co. v. Johnson Commc'ns, Inc.*, 285 F. Supp. 2d

1077, 1092 (S.D. Ohio 2003)).

District courts widely recognize the necessity of permanent injunctions in cases of copyright infringement, particularly where defendant had notice of the infringing action and continued to operate unlicensed, such as here. *See Canopy Music Inc. v. Harbor Cities Broadcasting, Inc.*, 950 F. Supp. 913, 916 (E.D. Wis. 1997); *Dream Dealers Music v. Parker*, 924 F. Supp. 1146, 1152-53 (S.D. Ala. 1996); *Broadcast Music, Inc. v. R. Bar of Manhattan, Inc.*, 919 F. Supp. 656, 659 (S.D.N.Y. 1996).

As noted above, between October 2005 and January 2008, Plaintiffs sent numerous letters and logged nearly two dozen phone calls in their attempts to contact Bruce Pfeiffer and P.A.R. (DE 11-2.) The letters clearly identify P.A.R.'s duty to comply with the copyright infringement statutes, and the consequences of not complying, including the statutory damages. (*Id.*) The phone calls were routinely avoided and the messages ignored. (*Id.*) Plaintiffs spent a great deal of time and effort trying to license the use of music at 469 Sports & Spirits, but P.A.R. has rebuffed them. Given Defendants' demonstrated reluctance to comply with the licensing requirements, an injunction is necessary to spare Plaintiffs the chore of bringing a similar copyright infringement action against Defendants in the future. Consequently, Plaintiffs' request for a permanent injunction is also granted.

### 3. ATTORNEY'S FEES AND COSTS

The issue of attorney's fees and costs in this matter has become fairly contentious, with extensive briefing from both parties. In their motion for default judgment filed September 9, 2009, Plaintiffs sought attorney's fees and costs of $7,167.73. (DE 9.) On September 30, 2009, P.A.R. filed its Response to Plaintiff's Motion for Default Judgment, and a Motion to Set Aside

Entry of Default. (DE 16; DE 17.) Both parties submitted briefs on those filings (DE 18; DE 20; DE 21; DE 22.), and eventually I denied the Motion to Set Aside. (DE 23.)

As a direct result of the additional briefs and filings required in response to P.A.R.'s September 30 filings, Plaintiffs submitted a Supplement to its Motion for Default Judgment, requesting the additional attorney's fees and expenses incurred to the total amount of $14,163.99 in attorney's fees, and the $573.23 in costs. (DE 26 ¶¶ 5-6.) P.A.R., not satisfied with the attorney's fees that Plaintiffs requested, challenged the reasonableness of the attorney's fees because they did not include an itemized list of the hours billed. (DE 30.) Plaintiffs replied, attaching Isenbarger and Lundquist's billing records (DE 31), which in turn prompted another round of sur-reply (DE 34) and sur-surreply (DE 35). The whole matter has frankly spun out of control. As a result of the additional briefing related to the attorneys' fees, Plaintiffs requested another addition to their attorney's fees, this time in the amount of $2,262.00, to total $16,425.99. (DE 31, at 5.)

Similar to the discretion afforded district courts in determining statutory damages, 17 U.S.C. § 505 grants discretion to district courts in awarding attorney's fees and costs:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party....[T]he court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505. "Additionally, the court may, in its discretion, award attorney's fees when the goals and objectives of the Copyright Act would be furthered by such a fee award." *Divine Mill*, 2008 WL 4853575, at *3 (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)). The Supreme Court has endorsed a list of nonexclusive factors for determining the reasonableness of attorney's fees. *See Fogerty*, 510 U.S. at 534 n.19. Those factors include "frivolousness,

7

motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* (quoting *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 156 (1986)). Attorney's fees are typically based on the "lodestar" amount, calculated by "multiplying the number of hours an attorney reasonably expended on the litigation times a reasonable hourly rate." *Mathur v. Board of Trs. of So. Ill. Univ.*, 317 F.3d 738, 742 (7th Cir. 2003).

Initially, Defendants objected to the attorney's fees requested by Plaintiffs because Plaintiffs failed to specify which attorney was charging which rate and how many hours each of the two Plaintiffs' attorneys had worked. (DE 30.) Plaintiffs cured their lack of specificity in the attorney's fees with a comprehensive log of hours billed, rates, and disbursements made. (DE 31-2.) The exhibit clearly shows the number of hours performed by each of the two attorneys, a brief description of the work performed, and the rates charged for the period beginning September 25, 2008 and ending February, 28, 2010. (*Id.*)

In their Sur-Reply, Defendants contend that both the rates charged and the number of hours worked by Plaintiffs' attorneys here are unreasonable. (DE 34.) Specifically, Defendants contend that the 64.3 total hours expended in this case includes much duplication of efforts by the two attorneys working on the case, redundancies in the work performed, and "vague, excessive and cryptic" entries in the time log. (DE 34, at 6.) I am not convinced.

First, the rates charged aren't unreasonable. Plaintiffs' attorneys Phil Isenbarger and Nathan Lundquist charged $275 per hour and $205 per hour, respectively, which is not at all unreasonable given Defendants' similar rate, and the fact that Mr. Isenbarger was billing at a rate below his usual rate. And the amount of time spent – with one exception – is also reasonable.

8

Plaintiffs submitted a comprehensive account of the hours spent on this matter, many of which have been expended responding to Defendants' motions. The award of damages here is much closer to the statutory minimum than it is to the statutory maximum. And since litigation began, a large portion of Plaintiffs' attorney's fees have been the result of responding to Defendants' motions, including a groundless Motion to Vacate Entry of Default.

There is, however, a limit to what Plaintiffs can reasonably collect. Collecting attorneys' fees up to the point where the parties' brief only disputed attorneys' fees is perfectly appropriate. However, the additional $2,262.00 in fees and costs that Plaintiffs incurred from replying to P.A.R.'s response to the supplementation to the motion for default judgment isn't warranted. The only reason Plaintiffs incurred additional attorneys' fees in replying to P.A.R.'s response to its supplementation was because Plaintiffs' initial filing was scant; it didn't provide specific enough details about the fees incurred in the first place. (DE 31.) To award additional attorneys' fees incurred to correct a mistake the attorneys made wouldn't be reasonable, so I won't award Plaintiffs the additional $2,262 requested. Consequently, Plaintiff's request for attorney's fees in the total amount of $14,737.22 is granted.

## CONCLUSION

The Court **Grants** Plaintiffs' motion for default judgment with relief as follows: Plaintiffs are awarded statutory damages in the total amount of $8,000; attorney fees and costs in the total amount of $14,737.22; and the investigative costs in the amount of $573.23. Post-judgment interest shall accrue as prescribed under 28 U.S.C.§ 1961.

It is **Further Ordered** that, pursuant to 17 U.S.C. § 502, Defendants, P.A.R. and Bruce Pfeiffer, are permanently enjoined and restrained from publicly performing any copyrighted

9

musical composition in the American Society of Composers, Authors and Publishers repertory without proper license or authorization.

**SO ORDERED.**

**ENTERED**: July 9, 2010

s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT